# United States District Court
# Central District of California

| | |
|---|---|
| DARRELL ASBERRY, MICHAEL F. CORDES, SHIRLEY PIATT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE MONEY STORE, TMS MORTGAGE, INC., HOMEQ SERVICING CORP., WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case № 2:18-CV-01291-ODW (PLAx)<br><br>**ORDER GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS [23]** |

## I.    INTRODUCTION

Darrel Asberry, Michael F. Cordes, and Shirley Piatt ("Plaintiffs") bring this putative class action on behalf of themselves and two subclasses seeking damages for Defendants' allegedly fraudulent lending practices.  (*See generally* First Am. Compl. ("FAC"), ECF No. 13.)  Plaintiffs bring claims for 1) Breach of Contract; 2) Breach of the Covenant of Good Faith and Fair Dealing; 3) Unfair Business Practices, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; 4) Restitution to Avoid Unjust Enrichment; and 5) Fraud.  (*Id.*)  The Money Store, TMS Mortgage, Inc., HomEq Servicing Corp., and Wells Fargo Bank, N.A. ("Defendants") move to dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  After considering the papers filed in

connection with the Motion, the Court deemed the Motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons below, the Court **GRANTS**, in part, Defendants' Motion. (ECF No. 23.)

## II. REQUESTS FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of several pleadings related to a prior action. (Defs. Req. for Jud. Not. ("DRJN"), ECF No. 24; Defs. Supp. Req. for Jud. Not. ("DSRJN").) "[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991). Public court filings are not typically subject to dispute, and thus are generally proper matters to judicially notice. *See, e.g., Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) (taking judicial notice of public documents submitted in support of Rule 12(b)(1) and 12(b)(6) motion); *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.35 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1124 n.29 (9th Cir. 2002) (taking judicial notice of a complaint in another case).

Plaintiffs object to Defendants' Supplemental Request for Judicial Notice because certain documents are letters to the court in the prior action. (Plfs. Obj. to DSRJN, ECF No. 37.) Plaintiffs are correct that the Court may not take judicial notice of pleadings filed, or orders of the court in other proceedings "for the truth of the facts recited therein, but [it may] for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (citations omitted). The Court is also permitted to evaluate prior pleadings in applying issue preclusion principles, such as the Court is required to do here. *See Reyn's Pasta*, 442 F.3d at 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings when deciding issue

preclusion); *Young Money Entm't v. Digerati Holdings*, LLC, No. 2:12–cv–07663–ODW(JCx), 2012 WL 5571209, *3 (C.D. Cal. Nov. 15, 2012) (considering substance of summary judgment order when deciding claim preclusion); *see also Silber v. Mabon*, 18 F.3d 1449, 1451–52 (9th Cir. 1994) (reviewing stipulations filed and orders entered regarding notice in prior class-action litigation to evaluate preclusive effect).

With this framework, the Court considers the prior pleadings to analyze whether Plaintiffs' claims are barred by issue preclusion, but does not rely on the truth of the facts recited therein for any other purpose. *See Reyn's Pasta*, 442 F.3d at 746 n.6. The Court also **DENIES** Defendants' Request that the Court take judicial notice of Exhibits T and M. Both exhibits are letters written by Plaintiffs' counsel relating to the prior action, and do not significantly bear on the Court's issue preclusion analysis. Accordingly, the Court **GRANTS, in part,** Defendants' Requests for Judicial Notice (ECF Nos. 24, 32), and **SUSTAINS, in part, and OVERRULES, in part,** Plaintiffs' Objections. (ECF No. 37.)

### III. FACTUAL BACKGROUND[1]

The filing of this action follows a jury trial, and subsequent appeal in the Second Circuit, which involved the same Defendants, and similarly situated plaintiffs. Because much of the Court's reasoning turns on the outcome of the first action, the Court explains the history of the first action, *Mazzei v. The Money Store* ("*Mazzei* Action"), No. 01 Cv. 5694(JGK), (S.D.N.Y. filed June 22, 2001). Next, the Court addresses the allegations here, as compared to those in the *Mazzei* Action.

**A.** ***Mazzei* Action**

Joseph Mazzei filed an action against The Money Store, Inc., TMS Mortgage, Inc., and HomEq ("HomEq Defendants") in 2001.[2] (FAC ¶ 24.) Mazzei took a

---

[1] All factual references are allegations taken from Plaintiffs' FAC and accepted as true for purposes of this Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] Wells Fargo Bank, N.A. currently owns these defendants via merger. (FAC ¶¶ 15–16.)

3

mortgage loan in 1994, and ultimately fell behind on his payments. (*Id.* ¶¶ 25–26.) After default, the HomeEq Defendants accelerated his loan and initiated non-judicial foreclosure proceedings in California. (*Id.* ¶ 26.) Mazzei then sold his property so that he could pay off the loan. In 2001, Mazzei filed a lawsuit and claimed that: 1) the HomEq Defendants impermissibly charged him late fees after accelerating the loan; and 2) the HomeEq Defendants paid portions of Mazzei's loan pay-off, which were earmarked for attorneys' fees, to non-attorneys. (*See id.* ¶ 36.) The parties engaged in protracted discovery, and in 2012, Mazzei finally moved for class certification. (*Id.* ¶¶ 29–36.)

The district court certified a "Fee-Split Class" and a "Late Fee Class." (*Id.* ¶ 36.) The Fee-Split Class included "all borrowers charged for amounts paid to Fidelity, a non-lawyer entity, from attorneys' fees charged to borrowers during the Class Period." *Mazzei v. Money Store*, 288 F.R.D. 45, 62 (S.D.N.Y. 2012), *overruled by,* 308 F.R.D. 92 (decertifying class). The Late Fee Class included "every borrower who was charged late fees after the borrower's loan was accelerated, and where the accelerated loan was paid off (or foreclosed on) during the Class Period." *Id.* at 66.

After the court certified the sub-classes, the parties continued to identify class members. (FAC ¶¶ 37–38.) Defendants then revealed that Wells Fargo purchased the HomEq Defendants, and that Defendants no longer possessed the databases that included information regarding the loans of the class members. (*Id.*) Defendants told Plaintiffs that the accounting firm, Ernst & Young, had the databases. (*Id.* ¶ 37.) Plaintiffs argued that Defendants failed to preserve certain databases that would have provided electronic invoices from law firms to Fidelity, or other documents that would have shown the division of fees, which was relevant to the Fee-Split Class. (*Id.* ¶¶ 38–39.) Plaintiffs moved for sanctions related to Defendants' failure to preserve these databases. The Court "held that although the defendants willfully failed to preserve the New Invoice System in the same accessible form that had previously existed…there was no evidence of the defendants' bad faith in the sense that the

defendants were intentionally depriving the plaintiff of information for use in [the] litigation." *Mazzei v. Money Store*, 308 F.R.D. 92, 101–02 (S.D.N.Y. 2015) (quotation omitted).

The case proceeded to trial, and the jury returned a $54 million verdict in favor of the plaintiffs on the Late Fee Class, and in favor of the HomeEq Defendants on the Fee-Split Class. *See id.* at 94. The plaintiffs moved for a new trial on the Fee-Split Class claim, and Defendants moved to decertify the Late Fee Class. *Id.* The court denied the plaintiffs' new trial motion, which was based on, among other things, the HomeEq Defendants' failure to preserve evidence discussed above. *Id.* at 106. As to the spoliation argument, the court reasoned that the "plaintiff failed to seek a greater sanction in his initial motion and this Court appropriately refused to grant a more severe sanction at trial in view of the tangential nature of the New Invoice System and the plaintiff's failure to pursue evidence diligently from alternative and more relevant sources." *Id.* at 102. This was effectively the court's third time addressing, and discounting, plaintiffs' spoliation claims. *See id.*

The court then decertified the Late Fee Class for two reasons. *Id.* at 112–13. First, Mazzei failed to present class-wide evidence that the plaintiffs were in privity with the defendants, such that they could pursue their breach of contract claims. *Id.* at 113. This was because many of the class members' loans were serviced by the HomeEq Defendants, but did not originate with them. *See id.* Second, Mazzei was not typical of the class because his loan originated with, and was serviced by, the HomeEq Defendants. *Id.* at 112–13. Thus, the court reasoned, individual questions regarding each class member's contract with the defendants (or lack thereof in the event the loan did not originate with them) predominated over the common questions, rendering the class untenable. *Id.* The court further reasoned that "decertifying the class furthers the interests of absent class members because it protects them from being saddled with the fact that the plaintiff failed to produce enough evidence to protect their interests at trial." *Id.* at 113 (citing *Rector v. City & Cnty. of Denver*, 348

F.3d 935, 949 (10th Cir. 2003)). The Second Circuit affirmed the trial court's decertification order, and denial of Plaintiffs' motion for new trial. *Mazzei v. Money Store*, 829 F.3d 260, 273 (2d Cir. 2016) (affirming decertification order); *see also Mazzei v. Money Store*, 656 F. App'x 558, 560 (2d Cir. 2016) (considering the plaintiffs' spoliation argument and affirming, in summary order, denial of the plaintiffs' motion for new trial).

## B. Current Action

Three plaintiffs bring this action: Michael F. Cordes, Shirley Piatt, and Darrel Asberry. (*See generally* FAC.)

Cordes took out a loan, which was ultimately transferred to a securitized trust with Wells Fargo as trustee and HomEq as the servicer. (*Id.* ¶¶ 100–01.) Defendants accelerated the loan in 2004, and he claims that he was charged $220.42 in late fees in 2005. (*Id.* ¶¶ 105–07.) Cordes claims these fees were improper based on his contract with the lender, and California Civil Code sections 2924(c), 2924d, and 2924.4. (*Id.*) He also claims Defendants improperly charged him for Broker Price Opinions, property inspections, a payoff quote demand fee, a lien release fee, a recording fee, attorney's fees for foreclosure, and foreclosure costs, in 2005. (*Id.* ¶¶ 109–11, 121.) He paid the loan in full in 2005. Cordes fell within the definition of the Fee-Split Class and the Late Fee Class in the *Mazzei* Action.

Piatt took a loan in 1999, and sometime thereafter HomEq became the owner of the mortgage note. (*Id.* ¶¶ 127–28.) She also claims that after her loan was accelerated, in 2003, Defendants impermissibly charged her post-acceleration late fees. (*Id.* ¶¶ 109–11, 121.) She paid off the loan later in 2003. Piatt fell within the definition of the Late Fee Class in the *Mazzei* Action.

Asberry also took out a loan, in the early 2000s, which was eventually "assigned to and/or serviced by the Defendants." (*Id.* ¶ 133.) After defaulting, Asberry obtained funds to pay the amount Defendants claimed he owed, including fees and expenses associated with the foreclosure, which he claims Defendants

improperly initiated in any event. (*Id.* ¶ 139.) On June 9, 2006, Asberry paid off the loan in full, and paid Defendants $335,028.00. (*Id.* ¶ 140.) He claims that Defendants charged him $3,142.06 for "legal fees and/or expenses based on an invoice which were [sic] never disclosed to Asberry, nor provided to the Defendants, until after Asberry was told he had paid his loan in full." (*Id.*) In any event, Asberry claims, on information and belief, that Defendants improperly shared these fees with non-attorneys, and that the fees were in excess of the amount allowed by the contracts governing the relationships between the lender, servicer, and borrower. (*Id.* ¶ 141.)

Asberry further alleges that, while he should have been identified as a member of both classes in the *Mazzei* Action, he did not receive notice and had no basis to believe that Defendants improperly charged him late fees, or otherwise improperly split his loan payment until class counsel explained the violations in 2017. (*Id.* ¶¶ 142–43.) Until then, Defendants had concealed their improper charges. (*Id.*)

With these representatives, Plaintiffs seek to certify two classes: the "Late Fee Class II," and the "Fee-Split Class II." (*Id.* ¶ 19.) The Late Fee Class II includes:

> All borrowers of loans originated by or assigned to HomEq who, after March 1, 2000, paid late fees after acceleration of the loan where the loan was not subsequently reinstated by the borrower's payment of the entire delinquent amount outstanding; and/or (b) [sic] all borrowers of loans owned and/or serviced by HomEq for property located in California, Ohio, Delaware, Montana, New Jersey and/or Michigan who, after March 1, 2000, paid post-acceleration late fees.

(*Id.* ¶ 19.a.)

The Fee-Split Class II includes:

> All borrowers of loans owned and/or serviced by HomEq for property located in California who, after March 1, 2000, paid fees in foreclosure, bankruptcy or eviction actions which (i) were shared with Fidelity National Foreclosure Solutions (Fidelity) or another non-attorney outsourcer; or (ii) were in excess of the fees which were allowed to be charged under HomEq's governing Master Service

>Agreement with Fidelity and/or the Network Agreements
>with law firms and/or other service providers.

(*Id.* ¶ 19.b.)

## IV. LEGAL STANDARD

A motion to dismiss under 12(b)(6) is proper where the plaintiff fails to allege a cognizable legal theory or where there is an absence of sufficient facts alleged under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Accusations of fraud require a heightened particularity in pleading. *See* Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Cafasso, ex rel. U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id.* This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Generally, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the party. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

# V. DISCUSSION

Defendants first argue that the judgment in the *Mazzei* Action bars Plaintiffs' claims pursuant to res judicata principles. Next, Defendants claim that Plaintiffs' claims are barred by the relevant statutes of limitations, and should not be tolled.

## A. Res Judicata

Res judicata bars a subsequent action where there is: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity of the parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (quoting *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n. 3 (9th Cir. 2002)). This doctrine applies equally in the class action context. *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 874 (1984) (citations omitted) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."). Because the result of the *Mazzei* Action differed for each of Plaintiffs' subclasses, so does the Court's analysis.

### 1. Late Fee Class II

While Plaintiffs spend some time discussing whether the *Mazzei* Action has a preclusive effect on their Late Fee Class II claims, Defendants concede that these claims are not barred by res judicata. (Reply 11.) Moreover, the district court in the *Mazzei* Action specifically explained that decertifying the class "further[ed] the interests of absent class members because it protects them from being saddled with the fact that the plaintiff failed to produce enough evidence to protect their interests at trial." *Mazzei*, 308 F.R.D. at 113 (citation omitted). Accordingly, the Late Fee Class II claims are not barred on res judicata grounds.

### 2. Fee-Split Class II

The jury in the *Mazzei* Action returned a verdict for the defense on the Fee-Split Class's claims, which the Second Circuit upheld on appeal. *See Mazzei*, 656 F. App'x at 560. Defendants argue that the jury's finding precludes the Fee-Split Class II's

claims here because the jury's verdict was a "final judgment on the merits," barring subsequent litigation of claims based on the same nucleus of operative fact. *See Adam Bros. Farming v. Cnty. of Aanta Barabara*, 604 F.3d 1142, 1148–49 (9th Cir. 2010) (holding that jury verdict constitutes final judgment on the merits for purposes of res judicata). Asberry counters that he may proceed with his claim because: 1) he did not receive notice of the prior action until contacted by class counsel in 2017; and 2) he asserts new claims that the jury did not adjudicate in the *Mazzei* Action. (Opp'n 22.)

While Federal Rule of Civil Procedure 23 does not require *actual* notice to bind absent class members, it requires that the notice procedures provide the absent class members due process. *See Silber*, 18 F.3d at 1554–55 (discussing due process standard for class notice). "[I]n the Ninth Circuit's view, the Supreme Court's decisions on due process and notice to class members should not be read to require that a class member receive actual notice…." *Gorton v. Wells Fargo Bank NA*, No. SACV121245JVSMLGX, 2012 WL 12887063, at *3 (C.D. Cal. Nov. 27, 2012) (citing *Silber*, 18 F.3d at 1454). "The notice must instead be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Silber*, 18 F.3d at 1454).

Asberry claims that because of Defendants' "grossly negligent" and "willful" failure to preserve their databases, he was never notified that he was a member of either class in the *Mazzei* Action. (Opp'n 22.) However, the court was not required to assure that Asberry received actual notice. *Silber*, 18 F.3d at 1454. The court also addressed Defendants' alleged failure to preserve its databases in the *Mazzei* Action, certified the Fee-Split Class, and approved the notice procedures submitted by the parties. (Defs.' RJN, Ex. L ¶¶ 7, 10, ECF No. 24-13.) The court found that the notice was the best practicable method under the circumstances, and that was all that was required to bind absent class members. *Silber*, 18 F.3d at 1454. Asberry makes no allegations attacking the validity of the procedural process employed to identify

absent class members, other than to raise the Defendants' alleged destruction of its databases. However, the Court is not inclined to revisit the discovery rulings made in the *Mazzei* Action. Accordingly, the fact that Asberry did not receive actual notice of the *Mazzei* Action does not bar application of res judicata principles. *Id.*; *see also Gorton*, 2012 WL 12887063, at *3.

The question then becomes whether Plaintiffs' claims here are sufficiently similar to the claims in the *Mazzei* Action such that they are barred by the jury's verdict. "The fact that res judicata depends on an 'identity of claims' does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Tahoe-Sierra Pres. Agency*, 322 F.3d at 1077–78. The Court must analyze whether the "two suits arise from 'the same transactional nucleus of facts.'" *Id.* (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001)).

The Fee-Split Class from the *Mazzei* Action included "all similarly situated borrowers, who…from March 1, 2000 to the present were charged amounts paid to Fidelity, a non-lawyer entity, from attorneys' fees charged to borrowers." (Defs. RJN Ex. E.) In this case, Asberry limits the proposed class to borrowers in California, and those who paid fees that "(i) were shared with Fidelity…or another non-attorney outsourcer; or (ii) were in excess of the fees which were allowed to be charged" pursuant to the relevant contracts between Defendants and third-party mortgage servicers. (FAC ¶ 19.) The only claims that could arguably be construed as different from the *Mazzei* Action are Plaintiffs' references to breaches of contracts governing the relationship between Defendants and the mortgage servicers. (*See* FAC ¶¶ 19, 126, 141, 158.) However, these claims arise from the same nucleus of facts that the *Mazzei* Action adjudicated because the Fee-Split Class's claims relied on substantially the same Defendants improperly splitting fees with non-attorneys.[3] *See also Mazzei*,

---

[3] The only new defendant in this action is Wells Fargo. (*See generally* FAC.) However, the addition of Wells Fargo is a function of Wells Fargo acquiring the HomeEq Defendants, which were the

11

656 F. App'x at 560 (denying motion for new trial on Fee-Split Class claims). That the Fee-Split Class II Plaintiffs now also claim that the same Defendants breached contracts by splitting fees with non-attorneys during the same period, and revolving around the same lending practices, does not let them escape res judicata. *IUOE-Emp'rs Constr. Indus. Pension v. Karr*, 994 F.2d 1426, 1429–30 (9th Cir. 1993) (holding that successive claims for breach of contract barred by res judicata even where evidence necessary for the second action may have slightly differed from first action).

The policies underlying res judicata favor this result too. "The doctrine of res judicata 'is motivated primarily by the interest in avoiding repetitive litigation, conserving judicial resources, and preventing the moral force of court judgments from being undermined.'" *Id.* at 1430 (quoting *Haphey v. Linn Cnty.*, 942 F.2d 1512, 1518 (9th Cir. 1991), *rev'd in part on other grounds*, 953 F.2d 549 (9th Cir. 1992) (en banc)). The *Mazzei* Action continued for close to ten years. The Fee-Split Class litigated its claims, tried them to a jury, and had the opportunity to raise these breach of contract allegations there. Now allowing Plaintiffs to resurrect the Fee-Split Class's claims from the ashes of the jury's defense verdict does not further any of the policies underlying the application of res judicata. *Id.* (quoting *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986)) ("For this reason, res judicata bars not only all claims that were actually litigated, but also claims that 'could have been asserted' in the prior action."). Furthermore, the Fee-Split Class II's theory of liability relies on Defendants' purported discovery violations in the *Mazzei* Action, which the trial court found not to be determinative, and the Second Circuit affirmed on appeal. *Mazzei*, 656 F. App'x at 560. Accordingly, the Fee-Split Class II's claims are barred by res judicata, and the Court **GRANTS** Defendants' Motion to Dismiss the Fee-Split Class II's claims, without leave to amend.

---

subject of the *Mazzei* Action. Plaintiffs argue that Wells Fargo is the successor-in-interest, and thus is liable for the same acts of its predecessors. (Opp'n 17.)

**B. Statute of Limitations**

Defendants argue that Plaintiffs' Late Fee Class II claims are barred by the statute of limitations. (Mot. 10.) The Court first identifies the relevant statutes of limitations, and then whether they were tolled during the pendency of the *Mazzei* Action.

*1. Applicable Statutes of Limitations*

Plaintiffs' breach of contract, breach of the covenant of good faith and fair dealing, and Plaintiffs' unfair competition claims are governed by a four-year statute of limitations. Cal. Civ. Proc. Code § 337(1); *Krieger v. Nick Alexander Imp., Inc.*, 234 Cal. App. 3d 205, 220 (1991); *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013) (citing Cal. Bus. & Prof. Code § 17208). Plaintiffs' fraud claim is governed by a three-year statute of limitations. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (citing Cal. Civ. Proc. Code § 338(d)).

Plaintiffs also assert a claim for "Restitution to Avoid Unjust Enrichment." (FAC ¶¶ 160–63.) Defendants argue that unjust enrichment is not a standalone cause of action in California, and therefore the Court should dismiss it. (Mot. 23.) Courts apply California's law on unjust enrichment with different results. *Compare GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, No. CV1504125MMMJEMX, 2015 WL 12731920, at *7 (C.D. Cal. Sept. 21, 2015) (applying California law and dismissing unjust enrichment claim) *with Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (declining to dismiss unjust enrichment claim). The Court construes Plaintiffs' claim for unjust enrichment as a claim in quasi-contract, seeking restitution. *See Astiana*, 783 F.3d at 762 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 166 (2014)) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'"). In California, a quasi-contract claim has a two-year statute of limitations. *Filet Menu, Inc. v. Cheng*, 71 Cal. App. 4th 1276, 1280 (1999).

Accordingly, Plaintiffs' claims are governed by, at most, a four-year statute of limitations, and, at least, a two-year statute of limitations.

Plaintiffs allege they were charged improper late fees between 2003 and 2006. (FAC ¶¶ 117–22, 131–32, 140.) Thus, the statute of limitations on their claims expired as early as 2008, or as late as 2010. Because Plaintiffs filed their complaint in this action on February 16, 2018, their claims are barred by the statute of limitations, absent some form of tolling.[4] (Compl., ECF No. 1.)

### 2. *Whether Plaintiffs' Claims Are Tolled*

Plaintiffs argue that their claims are tolled under two theories. First, they argue that the statutes of limitation should be tolled pursuant to the United States Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). Second, they claim they should be tolled under California's equitable tolling doctrine.

#### a. *American Pipe* Tolling

Plaintiffs rely on the Ninth Circuit's interpretation of *American Pipe* in *Resh v. China Agritech, Inc.*, 857 F.3d 994, 1002 (9th Cir. 2017) ("*Resh I*"). After Plaintiffs filed their Opposition, however, the Supreme Court reversed the Ninth Circuit's ruling in *Resh I*. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) ("*Resh II*"). *American Pipe* held that filing a class action based on federal claims tolls the statute of limitations for absent class members during the pendency of the action. *Id.* at 1804. "Where class-action status has been denied…members of the failed class [can] timely intervene as individual plaintiffs in the still-pending action, shorn of its class character." *Id.* at 1804 (citing *Am. Pipe*, 414 U.S. at 544). In *Resh I*, the Ninth Circuit extended *American Pipe* to also allow tolling of subsequent *class actions*, where the individual class member's claims would survive. 857 F.3d at 1002.

---

[4] Plaintiffs argue that the Fee-Split Class II should also be permitted because Plaintiffs did not discover the violation of their rights, such that the statute of limitations never began to run. (Opp'n 22–23.) Because the Court finds that res judicata principles bar the Fee-Split Class II claim, it does not address this argument.

14

In *Resh II*, the Supreme Court answered the question: "Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?" *Id.* The Supreme Court's answer was "no." *Id.* Accordingly, while the members of the Late Fee Class II may pursue their claims individually, to the extent they are not barred by the statute of limitations, *Resh II* forecloses the possibility that statutes of limitations were tolled on a class-wide basis. *Id.* Accordingly, Plaintiffs may not proceed on a class basis, unless their claims survive under another theory.

    b. Equitable Tolling

Plaintiffs also argue that California's equitable tolling doctrine applies to the Late Fee Class II. (Opp'n 12–15.)

Equitable tolling is a judicially created doctrine in California that seeks to preserve a plaintiff's claim and extend the statute of limitations where the plaintiff pursues one out of several possible legal theories. *See J.M. Hunting Beach Union High School Dist.*, 2 Cal. 5th 648, 657 (2017) (quotations omitted) (recognizing "a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage."). Plaintiffs seeking the benefit of the equitable tolling doctrine must show: 1) timely notice to the defendant during the statutory period; 2) lack of prejudice to defendant in gathering and preserving evidence; and 3) the plaintiff's reasonableness and good faith in pursuing the claim in a different forum. *See Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 748 (2014) (quoting *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal.4th 88, 102 (2008)).

Relying largely on *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1188 (9th Cir. 2009), Plaintiffs contend that California's equitable tolling is distinct from *American Pipe* tolling. (*Id.* at 14.) In *Hatfield*, the Ninth Circuit, applying California law,

explained that equitable tolling's purpose "is to toll the statute of limitations in favor of a plaintiff who acted in good faith where the defendant is not prejudiced by having to defend against a second action." *Hatfield*, 564 F.3d at 1188. *Hatfield* noted that *American Pipe* tolling and California's equitable tolling are not congruent doctrines, and therefore, even if *American Pipe* did not apply, equitable tolling might. *Id.* (noting *American Pipe* as "legal" tolling, and California's doctrine as "equitable" tolling). Whether California's equitable tolling doctrine applies to residents of different states is less clear. *Compare Hatfield*, 564 F.3d at 1188 (applying "equitable tolling" to California residents, but not non-resident class members), *with Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to toll claims of residents and non-residents where prior action was filed in different jurisdiction).

Defendants distinguish *Hatfield* because in that case the court in the prior action dismissed the case for lack of personal jurisdiction, as opposed the sufficiency of the class, as compared to Rule 23. *See Hatfield*, 564 F.3d at 1186. Indeed, the Ninth Circuit cautioned in *Hatfield* that it was "clearly not an instance in which [the plaintiff] is trying to reargue a denial of class certification because of a failure to meet Rule 23 of the Federal Rules of Civil Procedure or its state counterpart." *Hatfield*, 564 F.3d at 1189 n.8; *see also Moore v. Wachovia Sec., LLC*, No. CV 09–9071, 2010 WL 1437923, at *4 (C.D. Cal. March 15, 2010) (granting motion to dismiss and declining to toll plaintiff's claims where plaintiff sought to certify the same class of plaintiffs that were the subject of the first action). As Defendants argue, this is exactly what Plaintiffs seek in bringing the Late Fee Class II. (*See* FAC ¶¶ 3–8, 19 (discussing prior action, and defining classes as almost identical to the *Mazzei* Action).) Furthermore, unlike in *Hatfield*, the court in the *Mazzei* Action decertified the Late Fee Class because it did not comport with Rule 23. *Mazzei*, 308 F.R.D. at 113.

Additionally, Plaintiffs have not set forth specific factual allegations sufficient to meet their burden to plead equitable tolling. *See Moore*, 2010 WL 1437923, at *4.

Plaintiffs do not allege facts supporting lack of prejudice to Defendants, nor do they allege sufficient facts supporting their reasonableness. The only allegation supporting Plaintiffs' new action is their disdain for the Southern District of New York decertifying the Late Fee Class, which is insufficient to support a claim for equitable tolling. *Catholic Social Services, Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir.2000) ("[T]he filing of an earlier class action does not toll the statute of limitations when the second action is no more than an attempt to relitigate the correctness of the earlier class certification decision.").

With respect to the claims of the class members from outside of California, the Court finds they are barred by the applicable statute of limitations because equitable tolling does not apply cross-jurisdictionally. *See Hatfield*, 564 F.3d at 1188. Accordingly, the Court **GRANTS**, without leave to amend, Defendants' Motion to Dismiss the Late Fee Class II claims, as they pertain to residents of Ohio, Delaware, Montana, New Jersey and Michigan. (FAC ¶ 19.) The Court also **GRANTS** Defendants' Motion as it pertains to Shirley Piatt's individual claims because she is not a California resident, and thus her Late Fee Class II claims are also barred by the statute of limitations. (*See* FAC ¶ 127–32.)

With respect to the California Late Fee Class II members, and accompanying individual claims of Asberry and Cordes, the Court **GRANTS** Defendants' Motion, with leave to amend, as discussed below.

C. **Unfair Competition Law ("UCL") Claims**

Defendants argue that Plaintiffs' UCL claims are barred by the statute of limitations because the court in the *Mazzei* Action declined to certify California UCL subclasses in 2012. (Mot. 16–17; DRJN, Ex. D pp. 59–60.) Defendants argue that, from that point on, the plaintiffs in the UCL subclasses were on notice that they could have filed suit. (Reply 12.) In *Moore*, the court held that plaintiffs were not entitled to equitable tolling after they should have been put on notice that certain claims were no longer being pursued. *Moore*, 2010 WL 1437923, at *3–5. The same applies here.

To the extent the *Mazzei* Action tolled any class member's UCL claim, the tolling stopped accruing when the court declined to certify the UCL subclasses in 2012. *Id.* Accordingly, Plaintiffs' UCL claims are barred by the statute of limitations, *see Aryeh*, 55 Cal. 4th at 1192 (four-year statute of limitations for UCL claims), and the Court **GRANTS** Defendants' Motion to Dismiss the UCL claims, without leave to amend.

### D. Amendment & Defendants' Additional Arguments

A court should freely give leave to amend a complaint that has been dismissed, even if not requested by the party. *See* Fed. R. Civ. P. 15(a); *Lopez*, 203 F.3d at 1130. To the extent Asberry, Cordes, and the California members of the Late Fee Class II can allege additional facts that would bring their claims within the reach of California's equitable tolling laws, they must do so **within 21 days of entry of this Order**. Specifically, Plaintiffs must allege facts addressing the lack of prejudice to Defendants, and Plaintiffs' goodwill and reasonableness in pursuing this action. *See Hopkins*, 225 Cal. App. 4th at 748.

Defendants set forth several other arguments regarding the legal sufficiency of Plaintiffs' claims, as pleaded. (*See* Reply 15–17 (arguing Plaintiffs failed to sufficiently plead a claim for breach of contract, fraud, and unfair competition).) Because Plaintiffs' remaining claims are barred by the statute of limitations absent some form of tolling, the Court declines to address Defendants' remaining arguments.

### VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS**, in part, Defendants' Motion to Dismiss. (ECF No. 23.) Specifically, the Court **DISMISSES**:

- The Fee Split Class II in its entirety **without leave to amend**;
- The Late Fee Class II, as to class members who reside outside of California, **without leave to amend**;
- Shirley Piatt's individual claims, **without leave to amend**;

- The Late Fee Class II, as it pertains to California residents, **with leave to amend within 21 days of this order, and as explained above**;
- Asberry and Cordes' individual claims, **with leave to amend, within 21 days of this order, and as explained above**; and
- Plaintiffs' UCL claims, **without leave to amend**.

**IT IS SO ORDERED.**

August 8, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**